UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X
DR. GERALD R. FINKEL, as Chairman
of the Joint Industry Board of the
Electrical Industry,

                            Petitioner,                        **REPORT AND**
                                                         **RECOMMENDATION**
            -against-                                22-CV-0093 (EK) (TAM)

THORN ELECTRIC, INC.,

                            Respondent.
------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

        On January 6, 2022, Petitioner, Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical Industry, filed a Petition to confirm and enforce an arbitration award (the "Award") entered against Respondent, Thorn Electric, Inc. on December 28, 2021. (Pet. to Confirm Arbitration Award ("Pet."), ECF No. 1.) The arbitrator issued the Award upon finding that Respondent violated the collective bargaining agreement ("CBA") between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union") and Respondent. Respondent has neither responded to this action nor otherwise sought to challenge the Award. For the following reasons, the Court respectfully recommends that the petition and request for attorney's fees and costs be granted.

                            **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**I.    The Plans**

        Petitioner is the Chairman of the Joint Industry Board of the Electrical Industry (the "JIB"), which serves as the administrator of various employee benefit

1

plans established and maintained pursuant to the CBA.[1] (Pet., ECF No. 1, ¶ 4.) The JIB is the administrator and fiduciary within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(16)(A)(i) and 1002(21)(A), of numerous employee benefit plans (referred to collectively as the "ERISA Plans"). (*Id.* ¶ 5.) Each of the ERISA Plans is an employee benefit plan and a multi-employer plan under ERISA. (*Id.* ¶ 7.) *See* 29 U.S.C. § 1002(3) & (37). Each ERISA Plan is jointly administered by a board of trustees comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5). (Pet., ECF No. 1, ¶ 7.)

Under the CBA, each employer is required to submit a weekly remittance to the JIB that includes contributions to each of the ERISA Plans (except for the Deferred Salary Plan (the "DSP"))[2] and an assessment collected from each employed Union member. (*Id.* ¶ 6.) For the DSP, employers are required to deduct a specified percentage from the weekly wages of covered employees and to remit that amount plus any additional salary deferrals the employee has elected ("Employee Contributions") to the DSP. (*Id.* ¶ 8.) Employers must also remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions"); collectively, the Employee and Employer Contributions constitute the "DSP Contributions." (*Id.* ¶¶ 8–11.) The JIB may also collect employee loan

---

[1] The facts are taken from the Petition and exhibits, and are presumed true since no response has been filed. *See, e.g.*, *Finkel v. JCF Elec., Inc.*, No. 21-CV-3161 (CBA) (RER), 2022 WL 3682834, at *1 (E.D.N.Y. Aug. 25, 2022).

[2] One of the ERISA Plans, the Deferred Salary Plan of the Electrical Industry (the "DSP"), is a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of 401(k) of the Internal Revenue Code. (Pet., ECF No. 1, ¶ 8.)

2

payments and funds to support the operations of the Board (collectively referred to as "Non-ERISA Plan Contributions"). (*Id.* ¶¶ 9–10.) Employer contributions to each of the ERISA Plans (except the DSP), the Union assessment remittances, and the Non-ERISA Plan Contributions are referred to as the "JIB Contributions." (*Id.* ¶ 12.) The JIB Contributions, together with the DSP Contributions, are the "Required Contributions." (*Id.*)

Respondent is a corporation organized under the laws of the State of New York and maintains its principal place of business at 107-01 Rockaway Blvd., Ozone Park, NY 11417. (*Id.* ¶ 13.) Respondent, at all relevant times, was an "employer" under ERISA and the LMRA. (*Id.*) *See* 29 U.S.C. §§ 142(3), 1002(5).

## II. The Collective Bargaining Agreement

As a member of the Association of Electrical Contractors, Inc., Respondent agreed to be bound by the CBA for the period of April 10, 2019 through April 13, 2022. (*Id.* ¶ 14; *see* CBA, ECF No. 1-1.) Under the CBA, Respondent was required to make Required Contributions to the ERISA Plans, the Non-ERISA Plans, and to the Union "for all work within the trade and geographical jurisdiction of the Union and to submit weekly payroll reports that provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf Required Contributions are made." (Pet., ECF No. 1, ¶ 15; CBA, ECF No. 1-1, Art. II §§ 3–9, 11, 19–20.) In addition, under the CBA, the parties agreed to be bound by the provisions of the plan and trust documents, "including but not limited to, the Policy for the Collection of Delinquent Contributions." (Pet., ECF No. 1, ¶ 16; CBA, ECF No. 1-1, Art. II § 12(a).) The CBA further provided that an employer "shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages of twenty

3

percent (20%), in the event of entry of judgment against the Employer in an action or proceeding to collect delinquent contributions." (CBA, ECF No. 1-1, Art. II § 12(a).)

The JIB's policy for the collection of delinquent contributions ("Collection Policy"), provides that (1) if "an employer fails to remit Contributions and has not submitted payroll reports for such unpaid Contributions, the [JIB] may use a prior week's payroll report submitted by the employer to calculate the amount of Contributions due from the employer"; (2) the interest rate for delinquent contributions is to be calculated at the rate set forth in Section 6621 of the Internal Revenue Code for all ERISA Plans (except for the National Electrical Benefit Plan ("NEBF"), which has adopted a 10% interest rate); and (3) an employer shall be liable for liquidated damages and attorney's fees and costs if legal action is commenced. (Collection Policy, ECF No. 1-2, Art. II.E §§ 1–2, 5, II.F § 1.) The JIB also established arbitration procedures, which provide that the arbitrator shall have the authority to resolve any disputes between the JIB and an Employer "related to the Employer's obligation to contribute to the Funds, including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs" and that if the arbitrator finds in whole or in part for the JIB, the employer shall be liable for the arbitrator's fees, attorney's fees, and costs. (Arbitration Procedures, ECF No. 1-3, §§ I.K, II, and X.)

### III. The Arbitration and Award

Petitioner claims that Respondent failed to remit Required Contributions for the payroll weeks ending September 15, 2021 through November 10, 2021. (Pet., ECF No. 1, ¶ 25.) Accordingly, on November 11, 2021, pursuant to the Collection Policy and Arbitration Procedures, Petitioner initiated arbitration before the designated arbitrator, Stephen F. O'Beirne, Esq., and sent a notice of intent to arbitrate and a

4

memorandum to Respondent by electronic mail. (*Id.* ¶ 26–27; Statement of Claims, ECF No. 1-4.; Pre-Hearing Mem. of Law, ECF No. 1-5, ¶ 51.)

The arbitrator held a hearing on December 14, 2021. (Pet., ECF No. 1, ¶ 28.) On December 28, 2021, the arbitrator found that Respondent was in violation of the CBA by failing to remit contributions for the payroll periods ending September 15, 2021 through December 8, 2021, and by underpaying "contribution obligations for certain weeks in 2021." (Award, ECF No. 1-7, at 4.) The arbitrator ordered Respondent to pay Petitioner the following:

> [T]he sum of $172,802.78 consisting of: (1) JIB Contributions of $90,952.02; (2) interest thereon of $10,177.10; (3) DSP contributions of $38,655.65; (4) interest thereon of $1,164.48; (5) additional interest of $1,412; (6) liquidated damages of $26,041.53; (7) shortages and underpayments of $600; and (8) attorneys' fees, arbitration fees, and administrative costs of $3,800.

(Pet., ECF No. 1, ¶ 31; *see* Award, ECF No. 1-7.) The arbitrator also found that Respondent "is responsible for any costs, including reasonable attorney's fees, incurred by the JIB in enforcing th[e] Opinion and Award." (Award, ECF No. 1-7, at 6.)

Respondent has not abided by the Award. The Award has not been vacated or modified, and Respondent has not applied for such relief. (Pet., ECF No. 1, ¶¶ 33–34.) Petitioner now seeks confirmation of the Award, as provided for under the CBA and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

**IV. Procedural History**

Petitioner timely filed the instant Petition on January 6, 2022.[3] Petitioner asks the Court to (1) confirm the award; (2) award judgment in favor of Petitioner in the

---

[3] The Court notes that this was well within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award. *See, e.g.*, *Photopaint Techs., LLC v.*

5

amount of $172,802.78, plus interest from the date of the Award through the date of judgment; and (3) award $687 in attorney's fees and costs. (Pet., ECF No. 1, at 9.)

Respondent was served with the Petition on January 7, 2022, and Respondent's Answer was due by January 28, 2022. (Aff. of Service, ECF No. 9; Fed. R. Civ. P. 12(a)(1)(A)(i).) On February 10, 2022, Petitioner submitted a letter motion requesting that the motion to confirm the arbitration award be treated as an unopposed motion for summary judgment. (Letter Mot., ECF No. 12.) The Hon. Eric R. Komitee granted Petitioner's request on May 12, 2022, and directed service. (May 12, 2022 ECF Order.) Petitioner filed proof that service of the motion was effected on Respondent on May 12, 2022. (Certificate of Service, ECF No. 13.) Judge Komitee thereafter referred the Petition to the undersigned Magistrate Judge for a Report and Recommendation. (Oct. 11, 2022 ECF Order.) To date, there has been no response to the Petition or the motion.

## DISCUSSION

**I. Legal Standards**

   **A. Arbitration Awards**

Arbitration awards are not self-enforcing and "must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)[4]; *see also Trs. of the Bldg. Trades Annuity Fund, Educ. Fund,*

---

*Smartlens Corp.*, 335 F.3d 152, 158 (2d Cir. 2003) ("[S]ection 9 of the FAA imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA.").

[4] In the labor context, "Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1994), provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Loc. 802, Associated Musicians v. Parker Meridien Hotel*, 145

*Welfare Fund & N.Y. Elec. Grp., Inc.*, No. 11-CV-3801 (ADS) (ETB), 2012 WL 4328632, at *2 (E.D.N.Y. Mar. 21, 2012), *report and recommendation adopted*, No. 11-CV-3801 (ADS) (ETB) (E.D.N.Y. Sept. 19, 2012). The Second Circuit has instructed district courts that unopposed petitions to confirm arbitration awards should be construed as unopposed motions for summary judgment. *D.H. Blair & Co.*, 462 F.3d at 110; *see Finkel v. Uptown Commc'ns & Elec., Inc.*, No. 20-CV-3303 (LDH) (CLP), 2022 WL 2467471, at *3 (E.D.N.Y. Apr. 12, 2022). Accordingly, courts in this circuit generally use "the *Blair* standard to defer to an arbitrator's award, . . . and confirm the award so long as the arbitrator provided a barely colorable justification for the outcome reached." *Id.* (quotation marks and citations omitted).

Phrased another way, the "'review of arbitration awards is very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)), *cert. denied*, 142 S. Ct. 2889 (2022). The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). The Supreme Court has also observed that "courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an

---

F.3d 85, 88 (2d Cir. 1998). "'The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)), *cert. denied*, 142 S. Ct. 2889 (2022).

award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

This deference supports the federal policy of respecting parties' contractual agreements, particularly in the context of labor unions. "'The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.'" *Id.* (quoting *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Id.* (quoting *United Steelworkers*, 363 U.S. at 597). "[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)).

However, in the context of an unopposed motion to confirm such an award, the Court must still determine whether Petitioner has demonstrated that there are no material issues of fact in dispute, because "even unopposed motions for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *D.H. Blair & Co.*, 462 F.3d at 110.

### B. Attorney's Fees and Costs

Under ERISA, "[i]n any action . . . in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). Here, the CBA also provides that Petitioner is entitled to attorney's fees and costs. (Pet., ECF No. 1, ¶ 17; CBA, ECF No. 1-1, Art. II § 12(a).) "As applied to suits for the confirmation and enforcement of arbitration awards, the guiding principle has been stated as follows: 'when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'" *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (quoting *Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron, Div. of Textron, Inc.*, 688 F.2d 997, 999 (5th Cir. 1982)); *see also First Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Loc. 338*, 118 F.3d 892, 898 (2d Cir. 1997) (quoting *Int'l Chem. Workers Union, Local 227*, 774 F.2d at 47) ("In actions for the confirmation and enforcement of arbitral awards, a court may award attorneys' fees if the party challenging the award has 'refuse[d] to abide by an arbitrator's decision without justification.'").

## II. Analysis

### A. Confirmation of the Arbitration Award

Here, notwithstanding proper service of the Petition and the motion, Respondent has not appeared. The Court concludes that, in the absence of any opposition, Petitioner has established that there are no material facts in dispute.[5] In

---

[5] In addition to evaluating whether the arbitrator has a basis for the Award, the Court notes that Petitioner has demonstrated proper service on Respondent in this case, as well as compliance with the procedures required under the CBA. (*See* Aff. of Service, ECF

9

addition, based on the evidence presented at the arbitration, the record shows that the arbitrator had a reasonable basis for his conclusion that Respondent failed to remit contributions to the Plans during the specified time periods. (*See* Award, ECF No. 1-7.) The record also amply establishes that the arbitrator acted within the scope of his authority and that he had an adequate basis for the Award. (*See* Award, ECF No. 1-7.) Specifically, based on the CBA and the exhibits presented, including a summary of payments and delinquencies, the arbitrator ordered Respondent to pay the sum of "$172,802.78 consisting of: (1) JIB Contributions of $90,952.02; (2) interest thereon of $10,177.10; (3) DSP contributions of $38,655.65; (4) interest thereon of $1,164.48; (5) additional interest of $1,412; (6) liquidated damages of $26,041.53; (7) shortages and underpayments of $600; and (8) attorneys' fees, arbitration fees, and administrative costs of $3,800."[6] (Pet., ECF No. 1, ¶ 31; Award, ECF No. 1-7, at 5 & 6 n.5.) The record shows the arbitrator awarded these amounts in accordance with

---

No. 9.) Specifically, Petitioner commenced arbitration in accordance with the CBA, leading to an arbitration award for Petitioner, and now Petitioner seeks to confirm that award, as provided for under the CBA. (Pet., ECF No. 1, ¶¶ 19, 23–24, 26–32.) The record establishes that Respondent agreed to be bound by the CBA, the Collection Policy, and the Arbitration Procedures. (CBA, ECF No. 1-1.) The evidence submitted at arbitration showed that Petitioner complied with the required procedures under the CBA and that notice to Respondent was provided. (Pet., ECF No. 1, ¶¶ 26–29.)

[6] As noted above, Petitioner is entitled to attorney's fees under both the CBA and ERISA. (Pet., ECF No. 1, ¶ 17; CBA, ECF No. 1-1, Art. II § 12(a); Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2)(D).) In support of the application for attorney's fees for the arbitration, Petitioner sought "$2,400 in attorney's fees, arbitrators fees and costs." (Pre-Hearing Mem. of Law, ECF No. 1-5, ¶ 63, Exs. A, H.) At the arbitration, the arbitrator awarded Petitioner $3,800 in "attorney's fees, arbitration fees and costs incurred in [that] matter," noting in a footnote that "[t]he total amount includes a charge of one thousand four hundred dollars ($1,400.00) for drafting this Opinion and Award." (Award, ECF No. 1-7, at 5 & 6 n.5.) The record demonstrates that the total amount awarded ($3,800) comprised Petitioner's $2,400 in fees and costs plus $1,400 for drafting the arbitration opinion and Award. The arbitrator thus had a sound basis for the award of fees and costs.

the CBA, Collection Policy, and Arbitration Procedures. Accordingly, the Award should be confirmed.[7] (*See* Award, ECF No. 1-7.)

Given that an arbitration award should be confirmed if there exists "'even a barely colorable justification for the outcome reached,'" the Court "must confirm the arbitration award." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 704 (2d Cir. 1978)). *See also Marc Rich & Co., A.G.*, 579 F.2d at 704.

### B. Attorney's Fees and Costs

In evaluating an application for attorney's fees, "the district court should generally use the prevailing hourly rate in the district where it sits to calculate what has been called the 'lodestar' — what we think is more aptly termed the 'presumptively reasonable fee.'" *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008). As of 2020, "[i]n the Eastern District of New York, prevailing rates range from $300 to $400 per hour for experienced attorneys, $200 to $300 per hour for senior associates, and $100 to $150 per hour for junior associates." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *9 (E.D.N.Y. May 4, 2020) (collecting cases), *report and recommendation adopted*, No. 11-CV-3655 (ADS) (AKT),

---

[7] Not only was the Award justified by the CBA and plan documents, ERISA directs courts to award (1) "the unpaid contributions," (2) "interest on the unpaid contributions," and (3) "an amount equal to the greater of — (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of [the unpaid contributions]." 29 U.S.C. § 1132(g)(2). When interest accrues during the pendency of an action and is explicitly requested, such interest shall be awarded. *Ames v. STAT Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005) ("In general, a district court has discretion to award ERISA damages that accrue during the pendency of an action.").

11

2020 WL 2769266 (E.D.N.Y. May 28, 2020). "Some [Eastern District of New York] judges 'have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.'" *Safeco Ins. v. M.E.S., Inc.*, No. 09-CV-3312 (PKC) (VMS), 2018 WL 2766139, at *7 (E.D.N.Y. June 8, 2018) (quoting *Small v. New York City Transit Auth.*, No. 03-CV-2003-2139 (SLT) (MDG), 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014)), *aff'd*, 790 F. App'x 289 (2d Cir. 2019).

In support of the request for attorney's fees related to this Petition, counsel has submitted an invoice documenting the specific tasks performed, the hours worked, and the hourly rates for attorneys and support staff. (History Bill for the Court, ECF No. 1-8.) The requested fee is based on a billing rate for partners at the rate of $350 per hour, with legal assistants at the rate of $120 per hour. (Pet., ECF No. 1, ¶¶ 38–39.) Here, Petitioner requests the award of fees for .6 hours of legal work, billed at the rate of $350 per hour, related to drafting, finalizing, and filing the petition, for a charge of $210 in fees. (History Bill for the Court, ECF No. 1-8.) Petitioner also seeks $477 in court filing fees and charges related to service of the Petition. (Pet., ECF No. 1, ¶ 42.) The Court may take judicial notice of the $402 filing fee, and although Petitioner has not submitted any supporting documentation for the additional $75, the Court notes that the affidavit of service filed in this case reflects a charge of $40. (*See* Aff. of Service, ECF No. 9.) Having reviewed the billing records, the Court finds that the requested attorney's fee is reasonable, and that Plaintiff has demonstrated costs in the amount of $442. *See Finkel v. JCF Elec., Inc.*, No. 21-CV-3161 (CBA) (RER), 2022 WL 3682834, at *4 (E.D.N.Y. Aug. 25, 2022) (awarding $350 per hour and costs of $475); *Finkel v. High Volt Elec. Corp. of Am.*, No.

20-CV-4315 (AMD) (RER), 2021 WL 3931349 (E.D.N.Y. July 7, 2021) (awarding $300 rate for the same attorney, Ms. Nicole Marimon, and $440 in costs).

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the Petition to confirm the arbitration award be granted and that judgment be entered in Petitioner's favor. Specifically, the Court recommends (1) confirming the arbitration award; (2) awarding judgment in favor of Petitioner in the amount of $172,802.78 consisting of (a) JIB Contributions of $90,952.02; (b) interest thereon of $10,177.10; (c) DSP contributions of $38,655.65; (d) interest thereon of $1,164.48; (e) additional interest of $1,412; (f) liquidated damages of $26,041.53; (g) shortages and underpayments of $600; and (h) attorney's fees, arbitration fees, and administrative costs of $3,800; and (3) awarding $652 in attorney's fees and costs in connection with this case.[8]

\* \* \* \* \*

This Report and Recommendation will be filed electronically, and a copy will be sent by mail to Respondent Thorn Electric, Inc. Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Eric R. Komitee, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to

---

[8] As for prejudgment interest in this case, the Court notes that such interest is anticipated by the Collection Policy as set forth above. (*See* Collection Policy, ECF No. 1-2, Art. II, § E(1).) Petitioner has not, however, provided calculations or proposed how pre-judgment interest should be calculated, including, for example, the deficiency amount under the NEFB, for which interest is calculated at a different rate. Due to this information gap, the Court declines to recommend the award of prejudgment interest at this time. However, petitioner may submit proposed pre-judgment interest calculations by December 16, 2022. *See, e.g.*, *Finkel v. High Volt Elec. Corp. of America*, No. 21-CV-1881 (AMD) (RML), 2021 WL 6494727, at \*4 (E.D.N.Y. Nov. 30, 2021), *report and recommendation adopted*, No. 21-CV-1881 (AMD) (RML), 2022 WL 125824 (E.D.N.Y. Jan. 13, 2022).

appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

    **SO ORDERED.**

Dated: Brooklyn, New York
       December 2, 2022

                                        */s/ Taryn A. Merkl*
                                        TARYN A. MERKL
                                        UNITED STATES MAGISTRATE JUDGE